# JOSEPH & NORINSBERG, LLC

225 Broadway Suite 2700
New York, NY 10007
Telephone (212) 227-5700
Fax (212) 406-6890

_____
www.employeejustice.com

November 3, 2019

**VIA ECF**
Hon. Vernon S. Broderick, U.S.D.J.
United States District Court
United States Courthouse
40 Foley Square
New York, NY 10007

  Re: *Martinez v. Budo Maintenance Corp. et al.,*
     *No. 19-cv-03302 (VSB)*

Dear Judge Broderick:

  We represent Plaintiff Orlando Martinez ("Plaintiff") in the above-referenced employment matter, on behalf of himself and all others similarly situated. We write now, on behalf of all parties, to respectfully seek judicial approval of the Settlement Agreements, respectively, between Plaintiff and Defendant Budo Maintenance Corp., attached hereto as Exhibits A, and between Plaintiff and Defendant New Hope Fund, LLC, attached hereto as Exhibits B.

  Additionally, the parties respectfully request that the executed voluntary dismissals between the parties, annexed hereto as Exhibit C-D, be "So-Ordered" by the Court.

## I.  PROCEDURAL HISTORY

  Mr. Martinez commenced this action on April 12, 2019, on behalf of himself and all others similarly situated, against Budo Maintenance Corp., New Hope Fund, LLC, and Sherman Management, for unpaid overtime wages and related claims, pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), and the New York Labor Law ("NYLL"). Plaintiff amended the complaint on June 7, 2019. [Dkt. No. 17]. On June 21, 2019, Defendants Budo Maintenance Corp. and New Hope Fund, LLC answered the Amended Complaint and denied all material allegations. [Dkt. No. 23].[1]

  In the Amended Complaint, Plaintiff alleged as follows:

*Budo Maintenance*

  Plaintiff alleged that he worked as a full-time handyman and superintendent for two adjacent buildings for Budo Maintenance from approximately March 2017 to February 2018.

---

[1] On March, 29, 2019, Sherman Management was dismissed from the case without prejudice, pursuant to a stipulation of dismissal under Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, as Sherman Management had, in fact, never been Plaintiff's employer. [Dkt. No. 7].

The Hon. Vernon S. Broderick, U.S.D.J.
November 3, 2019
Page 2

Plaintiff claims that he worked long hours, 7 days a week, and was not paid overtime wages at the mandatory statutory rate of one-and-one-half times the regular rate for all the overtime hours he worked. Although Budo Maintenance occasionally paid Plaintiff some overtime pay, it never reflected the *actual* amount of overtime hours he worked.

Plaintiff additionally alleged that Budo Maintenance failed to provide him with a lawful wage statement upon hiring, and with accurate wage statements with each payment, as required by the New York Wage Theft Protection Act ("NYWTPA").

### *New Hope Fund*

Prior to his employment with Budo Maintenance, Plaintiff alleged that he worked for New Hope Fund for several months – approximately six months – as a full-time handyman and superintendent for two adjacent buildings. Plaintiff claimed that he worked long hours, and was not paid overtime wages at the mandatory statutory rate of one-and-one-half times the regular rate for all the overtime hours he worked. Although New Hope Fund occasionally paid Plaintiff some overtime pay, it never reflected the *actual* amount of overtime hours he worked.

Plaintiff additionally alleged that New Hope Fund failed to provide him with a lawful wage statement upon hiring, and with accurate wage statements with each payment, as required by the New York Wage Theft Protection Act ("NYWTPA").

### *The Court-Ordered Mediation*

In compliance with the Court's Pilot Program for FLSA cases, a court-ordered mediation session was held on August 26, 2019. Since the two Defendants – Budo Maintenance and New Hope Fund – were not united in interest, a confidential mediation session was held between Plaintiff and Defendant Budo Maintenance on the morning of August 26, 2019, and a separate confidential mediation session was held between Plaintiff and Defendant New Hope during the afternoon of August 26, 2019,

The parties negotiated in good faith and reached a resolution of all outstanding issues. The matter against Budo Maintenance was settled for Sixteen Thousand and Five Hundred Dollars ($16,500.00). (See Exhibit A).  Likewise, the matter against New Hope was settled for Three Thousand, Five Hundred Dollars ($3,500.00). (See Exhibits B).

## II.   THE SETTLEMENT AGREEMENTS

### *Budo Maintenance, Corp.*

Subject to the Court's approval, the Settlement Agreement reached by Plaintiff and Defendant Budo Maintenance, Corp. obligates Budo to pay Plaintiff the total sum of Sixteen Thousand and Five Hundred Dollars ($16,500.00) to resolve the case.  (See Exhibits A at ¶ 1).

As per the terms of the Settlement Agreement, after attorneys' fees and expenses, Plaintiff will receive Ten Thousand Five Hundred and Fifty Dollars and zero cents ($10,550.00), which

The Hon. Vernon S. Broderick, U.S.D.J.
November 3, 2019
Page 3

equals 0.66% of the total settlement sum, to be paid in two settlement checks, within 14 days of the Court's approval of the subject Settlement Agreement.  (Id.).

In exchange for the settlement payments, Plaintiff would agree to release all claims against the Defendant. The Settlement Agreement also contains a mutual non-disparagement provision, and a neutral reference provision. (Exhibits A at ¶¶ 3-4, 8-9).

The Budo settlement agreement provides for attorneys' fees in the amount of 0.33% of the settlement amount, which after adding back $675.00 in costs, Five Thousand, Nine Hundred and Fifty Dollars and zero cents ($5,950.00), to be paid within 14 days of the Court's approval of the subject Settlement Agreement. (Id. at ¶1). A disbursement log showing Plaintiff's costs in this action, which amounts to $ $675.00, is annexed hereto as Exhibit E.

*New Hope Fund, LLC*

Subject to the Court's approval, the Settlement Agreement reached by Plaintiff and New Hope Fund, LLC obligates New Hope to pay Plaintiff the total sum of Three Thousand and Five Hundred Dollars ($3,500.00) to resolve the case.  (Exhibits B at ¶ 1).

As per the terms of the Settlement Agreement, after attorneys' fees and expenses, Plaintiff will receive Two Thousand, Three Hundred and Thirty Dollars and zero cents ($2,330), which equals 0.66% of the total settlement sum, to be paid within 14 days of the Court's approval of the subject Settlement Agreement.  (Id.).

In exchange for the settlement payments, Plaintiff would agree to release all claims against the Defendant. The Settlement Agreement also contains a mutual non-disparagement provision, and a neutral reference provision. (Exhibits B at ¶¶ 3-4, 8-9).

The New Hope settlement agreement provides for attorneys' fees in the amount of 0.33% of the settlement amount, which amounts to One Thousand, One Hundred, Sixty-Seven Dollars and zero cents ($1,167.00), to be paid within 14 days of the Court's approval of the subject Settlement Agreement.  (Id at ¶1).

### III.   COSTS AND ATTORNEY'S FEES

The Budo Maintenance and New Hope settlement agreements provide for attorneys' fees in the amount of 0.33% of the settlement amount, as set forth above. Specifically, Plaintiff's counsel will receive $5,950.00 pursuant to the agreement between Plaintiff and Budo Maintenance, which is inclusive of costs. (Exhibit A). Additionally, Plaintiff's counsel will receive $1,167.00, 00 pursuant to the agreement between Plaintiff and New Hope Fund, LLC. (Exhibit B).

It is respectfully submitted that the attorney's fees and costs as set forth in the Settlement Agreements are fair and reasonable given the amount of time spent by Plaintiff's counsel in this case and the work that was performed to achieve a settlement that fully satisfies the Plaintiff.

The Hon. Vernon S. Broderick, U.S.D.J.
November 3, 2019
Page 4

Plaintiff's counsel, Chaya M. Gourarie, Esq., has been given an hourly rate of $400.00 in the Southern District of New York. See Leon v. Gazivoda Realty Co., Inc. et al, Docket No.: 18-cv-09723-AT (See Exhibit F, annexed hereto). Ms. Gourarie has billed a total of 31 hours in this case, which amounts to a lodestar of $12,400.00 – an amount which exceeds the attorney's fees being recovered under the within settlement agreements.

The work that Ms. Gourarie performed in this case included but is not limited to: i) face-to-face meetings with Plaintiff; ii) participating in numerous telephone conferences with Plaintiff and opposing counsel; iii) drafting and filing a complaint and then an Amended Complaint, iv) preparing for a Rule 16 conference before the Court; v) preparing damages charts, vi) preparing for the court-ordered mediation – reviewing and analyzing all discovery documents and preparing a mediation statement; vii) participating in an eight hour court-ordered mediation; viii) preparing the settlement agreement; and ix) preparing the subject motion.

Plaintiff's counsel has worked without compensation of any kind to date, and our fee is wholly contingent upon the result achieved. Under such circumstances, Courts routinely award attorneys' fees equaling one-third of the settlement amount. See e.g., Howard v. Don Coleman Advertising Inc., 2017 WL 773695, at *2 (S.D.N.Y., 2017) (Cott, J.) (approving attorneys' fees of one-third of the settlement amount, plus costs); Williams v. Magic Management, LLC, 2017 WL 4861990, at *3 (S.D.N.Y., 2017) (same); Rangel v. 639 Grand St. Meat & Produce Corp., No. 13 CV 3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sept 19, 2013) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiffs' retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit.").

### IV.  THE SETTLEMENT IS FAIR AND REASONABLE

The Second Circuit's decision in Cheeks v. Freeport Pancake House, Inc., 2015 WL 4664283 (2d Cir. 2015), provides that stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the Department of Labor. Id. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. Id. at *7 (citations omitted). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. Id. at *7 (citation omitted). If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved. Id. at *7 (citations omitted).

Indeed, generally, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." In re Penthouse Executive Club Compensation Litig., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether to approve a settlement agreement, the ultimate question is "whether the proposed settlement reflects a fair and reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

The Hon. Vernon S. Broderick, U.S.D.J.
November 3, 2019
Page 5

Here, there is no question that the Settlement Agreement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations over the course of several months, and then further negotiations at a court ordered mediation. The parties are represented by counsel who are highly experienced in wage and hour law, and who duly counseled their respective clients on the benefits and risks of continued litigation. In fact, the parties settled this case only after participating in a court-ordered mediation, and hearing the mediator's objective analysis of each party's position. Thus, this settlement is devoid of any fraud or collusion.

The proposed Settlement Agreement resolves *bona fide* disputes and reflects a reasonable compromise over sharply contested issues that led the parties to resolve this matter. Had the matter proceeded to summary judgment and/or trial, Defendants risked being exposed to greater damages, as Plaintiff might have demonstrated that he was entitled to greater damages. Plaintiff, however, also faced considerable risks in proceeding forward with the litigation, as Defendants may have demonstrated that Plaintiff's reasonable recollections of hours worked were inaccurate. Indeed, Defendants had presented time sheets, which if deemed credible, could have led to Plaintiff receiving no damages whatsoever. Moreover, Defendant New Hope insisted that Plaintiff has only worked for them for three months and was therefore not entitled to the damages he claimed.

Thus, to avoid the risks and costs of litigation, the parties were able to agree to a settlement in which Plaintiff will receive a fair amount of his claimed wages plus an amount in liquidated damages. Given the amount of time and resources that would be necessary to litigate the issues regarding liability and damages, all parties deem this settlement a fair compromise over contested issues. In exchange for the compensation to be provided to Plaintiff, he has agreed to dismiss his claims with prejudice. No party has admitted to any wrongdoing and the parties are desirous of not incurring any further costs and expenses in this case.

## CONCLUSION

Accordingly, the parties respectfully request that the Court approve the settlement agreements as fair and reasonable. Additionally, the parties respectfully request that the executed voluntary dismissals annexed hereto as Exhibits C-D be "So-Ordered" by the Court.

We thank the Court for its consideration of this request.

Respectfully Submitted,

JOSEPH AND NORINSBERG, LLC

By: _____
Chaya M. Gourarie, Esq.