UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                                                          :
ORLANDO MARTINEZ,                                         :
                                                          :
                                      Plaintiff,          :
                                                          :               19-CV-3302 (VSB)
                         -v-                              :
                                                          :               **ORDER**
                                                          :
BUDO MAINTENANCE CORP. et al.,                            :
                                                          :
                                      Defendants.         :
---------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

On August 29, 2019, the parties advised me that they had reached settlement agreements in

this Fair Labor Standards Act ("FLSA") case.  (Doc. 27.)  Parties may not privately settle FLSA

claims with prejudice absent the approval of the district court or the Department of Labor.  *See*

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015).  In the absence of

Department of Labor approval, the parties must satisfy this Court that their settlement is "fair and

reasonable."  *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015).  For the

reasons stated herein, I find that the settlement of the parties is fair and reasonable and therefore

approve it.

   I.      **Legal Standard**

To determine whether a settlement is fair and reasonable under the FLSA, I "consider the

totality of circumstances, including but not limited to the following factors:  (1) the [plaintiff's]

range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid

anticipated burdens and expenses in establishing their respective claims and defenses; (3) the

seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the

product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or

collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted).

"In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Fisher v. SD Prot. Inc*., 948 F.3d 593, 600 (2d Cir. 2020).  In requesting attorney's fees and costs, "[t]he fee applicant must submit adequate documentation supporting the [request]." *Id.*  The Second Circuit has described a presumptively reasonable fee as one "that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Restivo v. Hessemann*, 846 F.3d 547, 589 (2d Cir. 2017) (internal quotation marks omitted).  A fee may not be reduced "merely because the fee would be disproportionate to the financial interest at stake in the litigation." *Fisher*, 948 F.3d at 602 (quoting *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005)).  An award of costs "normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (internal quotation marks omitted).

"When a district court concludes that a proposed settlement in a FLSA case is unreasonable in whole or in part, it cannot simply rewrite the agreement, but it must instead reject the agreement or provide the parties an opportunity to revise it." *Fisher*, 948 F.3d at 597.

## II.    Procedural History

On November 3, 2019, the parties submitted their proposed settlement agreements between Plaintiff and Defendant Budo Maintenance Corp. ("Budo") and Defendant New Hope Fund, LLC ("New Hope"), along with a letter detailing why they believe the agreements reached in this action, and the contemplated attorney's fees, were fair and reasonable.  (Doc. 36.)  On September 8, 2020, I issued an order requesting supplemental information.  (Doc. 37.)  In particular, I requested that the parties file a supplemental letter outlining Plaintiff's maximum potential recovery for all of

2

Plaintiff's claims, as well as Plaintiff's counsel's time records supporting the request for attorney's fees. (*Id.*) On October 18, 2020, the parties submitted an estimate for Plaintiff's potential recovery, as well as counsel's time records. (Doc. 42.)

### III. <u>Discussion</u>

I have reviewed the settlement agreement, supporting evidence, and supplemental material in order to determine whether the terms are fair, reasonable, and adequate. I believe that they are and therefore approve the settlement agreement of the parties.

#### A. *Settlement Amount*

I first consider the settlement amounts. The agreement between Plaintiff and Budo provides for the distribution to Plaintiff of $16,500, inclusive of attorney's fees and expenses. (Doc. 36-1.) The agreement between Plaintiff and New Hope provides for the distribution to Plaintiff of $3,500, inclusive of attorney's fees and expenses. (Doc. 36-2.) In total, the two agreements provide for the distribution to Plaintiff of $20,000, inclusive of attorney's fees and expenses. (Doc. 42.) Counsel represents that the parties estimate that Plaintiff could have recovered damages up to $31,255. (*Id.* at 2–3.) While the settlement amount is therefore substantially less than Plaintiff could have recovered, the parties assert that this settlement is fair in light of the litigation and collection risks particular to this case.

Specifically, regarding Plaintiff's employment with Budo, the parties explain that during mediation "Defendant produced time sheets that showed that Plaintiff did not work the hours he claimed to have worked in his lawsuit" and that "Defendant's pay records showed that Plaintiff had been paid overtime wages by the Defendant, sometimes as much as 15 overtime hours per week." (*Id.* at 3.) Therefore, Plaintiff "risked receiving no damages from [Budo], since a jury could choose to credit Defendant's version of the facts." (*Id.*) Defendant Budo also contends that it produced a Wage Notice, which vitiates one of Plaintiff's claims under New York Labor Law. (*Id.*) Regarding

3

New Hope, Defendant submitted that because Plaintiff worked for New Hope principally in 2016, which was beyond the scope of the FLSA statute of limitations, the claim against New Hope was governed by the New York Building Code, 12 NYCRR § 141 *et seq*. (*Id*.)  The parties contend that "[r]esearch confirmed that Defendant was, in fact, correct, and Plaintiff would not be entitled to any overtime wages under the Building Code since Defendant had paid him at rates consistent with the Building Code." (*Id*.)  Additionally, Defendant New Hope produce a Wage Notice, vitiating one of Plaintiff's New York Labor Law Claims.  (*Id*.)

I find that the risks faced by Plaintiff, as well as the risk that Defendants could have been exposed to greater damages if they proceeded with this litigation, support settlement.  I also note that since this case is in its relatively early stages, there would be significant costs of continued litigation, which militate in favor of settlement.  Finally, there is no basis for me to believe that there was any fraud or collusion involved in the settlement.  Therefore, based on the representations of the parties and my own analysis of the totality of the circumstances present here, I find that the settlement agreement appears to be a fair and reasonable resolution of this dispute.

>    **B.**    ***Remaining Provisions***
>
>        1.    Release Clauses

Both of the agreements provide a release on behalf of Plaintiff, his heirs, executors, administrators, trustees, legal representatives, successors and assigns.  (Docs. 36-1, 36-2.)  The Budo agreement releases Defendant Budo "as well as Defendant's present and/or former parent corporations, subsidiaries, divisions, affiliated entities, including but not limited to Paradise Management LLC, Soundview Estates LLC, 1040 Boynton Avenue LLC, 1043 Boynton Avenue LLC, 1045 Boynton Avenue LLC, Staffpro, Inc., StaffPM LLC, Staff PM LLC, as well as the foregoing entities' shareholders, successors, executors, officers, partners, members, directors, agents, fiduciaries, representatives, and assigns" "from all claims that were asserted in this action,

including all claims related to alleged unpaid wages and compensation, as well as any and all claims which could have been asserted under" FLSA and New York Labor Law. (Doc. 36-1.) The New Hope agreement releases Defendant New Hope "as well as Defendant's present and/or former parent corporations, subsidiaries, divisions, affiliated entities, including but not limited to 437 Morris Park LLC, 1195 Sherman Ave. LLC A/K/A Sherman Management, as well as the aforementioned entities' shareholders, successors, executors, officers, partners, members, directors, agents, fiduciaries, representatives, and assigns" "from all claims that were asserted in this action, including all claims related to alleged unpaid wages and compensation, as well as any and all claims which could have been asserted under" FLSA and New York Labor Law. (Doc. 36-2.) The settlement agreements do not release "any claims arising after the [agreements] [are] executed," any claims required to enforce the agreement, or "any claims or rights which cannot be waived by law." (Docs. 36-1, 36-2.)

I find that these releases are not objectionable so as to render the agreements unreasonable under FLSA. "In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). On the other hand, "[i]n FLSA settlement agreements, a plaintiff may release any and all wage-and-hour claims that are at issue or could have been at issue in the instant litigation." *Brittle v. Metamorphosis, LLC*, No. 20 Civ. 3880 (ER), 2021 WL 606244, at *4 (S.D.N.Y. Jan. 22, 2021); *see also Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, No. 20-CV-7131 (KMK), 2021 WL 38264, at *5 (S.D.N.Y. Jan. 5, 2021) ("[C]ourts have held that in a FLSA settlement, the release must generally be limited only to wage and hour claims."); *Pinzon v. Jony Food Corp.*, No. 18-CV-105 (RA), 2018 WL 2371737, at *2 (S.D.N.Y. May 24, 2018) ("All the

5

released claims are related to wage-and-hour or other employee-benefits issues and are sufficiently narrow so as to survive judicial scrutiny").

Here, regarding all types of claims, the agreements are cabined to release only those "that were asserted in this action." (Docs. 36-1, 36-2.) Additionally, the agreements release "any and all claims which could have been asserted under" FLSA and New York Labor Law, which predate the agreements. (*See id*.) Given that this release is expressly limited to all claims asserted in the action, as well as claims that could have been asserted under FLSA and New York Labor Law that predate the agreements, I find that the terms are reasonable.

### 2. Non-Disparagement Clauses

The agreements provide a mutual clause stating that Plaintiff "will not at any time, intentionally make, publish, or communicate any non-truthful remarks, comments, or statements which are defamatory towards Defendants." (Docs. 36-1, 36-2.) The agreements also include a provision that "nothing in this section precludes or prevents Plaintiff from making truthful statements about his experience litigating the Action," and "Defendants agree that they will not intentionally make non-truthful defamatory statements about Plaintiff." (*Id*.) This clause is proper given FLSA settlement practice in this District. *See Baikin v. Leader Sheet Metal, Inc.*, 16 Civ. 8194 (ER), 2017 WL 1025991, at *1 (S.D.N.Y. Mar. 13, 2017) ("Courts in this District have held that while not all non-disparagement clauses are *per se* objectionable, if the provision would bar plaintiffs from making any negative statement about the defendants, it must include a carve-out for truthful statements about plaintiffs' experience litigating their case." (citation omitted)). Based on the non-disparagement clause's carve-out for truthful statements, I find the provision reasonable.

### C. *Attorney's Fees*

I next consider the attorney's fees contemplated in the settlement agreement. The Budo agreement provides for attorney's fees in the amount of one-third of the settlement amount, which

equals $5,950 and is inclusive of costs.[1]  (Doc. 36-1.)  The New Hope agreement provides for attorney's fees in the amount of one-third of the settlement amount, which totals $1,167 and is inclusive of costs.  (Doc. 36-2.)  Plaintiff's attorney billed a total of 42.1 hours on this matter at an hourly rate of $400, which amounts to a lodestar of $16,840.  (Doc. 42-1.)

A district court in this Circuit may use its discretion to calculate attorney's fees using either the lodestar method or the percentage of the fund method.  *See McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).  "[C]ourts in the Second Circuit routinely award attorney's fees in FLSA settlements of one-third the total recovery."  *Zorn-Hill v. A2B Taxi LLC*, Case No. 19-CV-1058 (KMK), 2020 WL 5578357, at *6 (S.D.N.Y. Sept. 17, 2020) (citations omitted); *see also Pinzon*, 2018 WL 2371737, at *3 ("When using a 'percentage of the fund' approach, 'courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.'" (quoting *Meza v. 317 Amsterdam Corp.*, No. 14-CV-9007 (VSB), 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015)).  Additionally, "[c]ourts regularly award lodestar multipliers from two to six times lodestar."  *Johnson v. Brennan*, No. 10 Civ. 4712(CM), 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011); *see also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481– 82 (S.D.N.Y. 2013) (awarding "approximately 6.3 times" the lodestar and stating "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar").

Thus, under the percentage of the fund method, both agreements' awards of attorney's fees of about one-third of the gross settlement amount are reasonable.  Alternatively, the lodestar is significantly greater than the combined award of $7,117.  Under either method of analysis, I find the attorney's fees contemplated in the settlement agreement to be fair and reasonable.

---

[1] The parties state in their joint letter that both settlement agreements provide for attorney's fees in the amount of 0.33% of the settlement amount.  (Doc. 36, at 3.)  The agreements reflect the correct dollar amounts to be 33% of the settlement amount as does the lion's share of the case law, so I find the error has no substantive impact on the fairness or reasonableness of the agreements.  If I am incorrect about the intent of the parties with regard to the attorney's fees, they should submit a revised settlement agreement 14-days of the filing of this order.

**IV.**   **Conclusion**

For the reasons stated above, I find that the parties' proposed settlement agreements are fair and reasonable.  The settlement agreements of the parties are hereby APPROVED.

The Clerk of Court is directed to terminate any open motions and close this case.

SO ORDERED.

Dated:   December 28, 2021
         New York, New York

_____
Vernon S. Broderick
United States District Judge